```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                            )
                                  )    Chapter 7
PATRICK WADE and                  )
CERINA WADE,                      )
                                  )    Bankruptcy No. 03-01568
      Debtors.                    )
------------------------------    )
PATRICK WADE and                  )
CERINA WADE,                      )
                                  )    Adversary No. 05-9164
      Plaintiffs.                 )
                                  )
vs.                               )
                                  )
SOLON STATE BANK,                 )
                                  )
      Defendant.                  )
```

**ORDER RE: COMPLAINT**

    This matter came before the undersigned for trial on October 12, 2006. Debtors/Plaintiffs Patrick and Cerina Wade were represented by attorney Thomas Fiegen. Defendant Solon State Bank was represented by attorneys Ray Terpstra and Natalie Ditmars. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

**STATEMENT OF THE CASE**

    The Bank claims a lien on Debtors' homestead. Debtors contend that the alleged lien is not valid based on their bankruptcy discharge and subsequent activities. The Bank wishes to foreclose against Debtors' homestead.

**FINDINGS OF FACT**

    Debtors attempted to develop the Oxford Heights subdivision in Johnson County, which they purchased in 2000 from AJK Development, a company owed by Arden Vesely. Solon State Bank provided financing for the development. After the purchase, Debtors had the plat of the subdivision amended in 2001 to increase the size of some of the lots. Although the evidence is

not entirely clear, it appears that Arden Vesely or his company has a lien on the land added by the amended plat.

By late 2002, the Bank had become concerned about the costs and delays associated with the development. Debtors Patrick and Cerina Wade agreed to meet with the Bank's Vice President, Steve Berner, and President, Neil Erusha, on November 22, 2002. The purpose of the meeting was to discuss the financing needed to hook up utilities and finish the subdivision development.

On November 22, 2002, both Debtors signed Promissory Note 406-0047343 ("Note 343") with a loan amount of $85,629 and Promissory Note 406-0047344 ("Note 344") with a loan amount of $35,000. These notes were secured by previous real estate mortgages on the subdivision real estate and security agreements covering personal property of Debtor's business, Altered Earth Excavating, Inc. Also, the notes were further secured by Debtors' homestead real estate in Johnson County through a Mortgage and an Assignment of Contract also executed by Debtors on November 22, 2002.

Both Debtors testified that Mr. Berner told them that the worst possible scenario would be that they would owe $50,000 on their house. Cerina Wade was especially reluctant to put a mortgage on her homestead. She thought there would be a line of credit of $50,000 secured by the homestead, and further believed that the line of credit had not been drawn on. The exhibits show that the notes signed on date of the Mortgage and Assignment of Contract exceed $50,000. Mr. Wade's testimony shows he understood that the Mortgage and the Assignment of Contract granted the Bank a lien on the homestead to secure the two notes signed on the same date.

Debtors also signed an open-end line of credit in the amount of $50,000 on April 17, 2003 (Exhibit I) which had not been drawn on as of April 21, 2003 when Debtors filed their bankruptcy petition. Although the Bank drew down on that line of credit postpetition, it has since reversed the draw and the April 17, 2003 note is no longer in issue in these proceedings. Thus, the Court need not address Count I of Debtors' Complaint.

Mr. Wade testified that he walked away from the Altered Earth machinery and equipment and stopped working on the development in the winter of 2002-03. After his abandonment of this property, the Bank repossessed and sold Altered Earth's machinery and equipment. Then, the Bank foreclosed on its mortgage on the Oxford Heights real estate. It successfully bid $500,000 at the foreclosure sale and asserts that a deficiency of

2

approximately $132,000, plus interest, remains unpaid from notes signed by Debtors both prior to and during the November 22, 2002 meeting.

In the foreclosure of the Oxford Heights real estate, the Bank used the original plat of the subdivision, rather than the 2001 amended plat. In its brief, the Bank explains that it had no rights in the additional property added when the original plat was amended. Thus, Debtors still own some of the subdivision real estate. This has created problems with the Bank marketing the property. The Bank has attempted to buy out Arden Vesely's mortgage interest in the remaining property. Mr. Vesely has refused the Bank's offers, however, until more improvements are made on the property because he owns additional land he intends to develop in the next phase of the project.

The real estate contract underlying Debtors' November 22, 2002 Assignment of Contract was set to balloon in 2004. This contract between Debtors and Lester Wolcott, dated December 1, 2001, reflects a purchase price of $220,000, with a $10,000 down payment and monthly payments of $1,500 at 7.75% interest. In 2004, Debtors sought but were unable to find refinancing for their home before the balloon date. Therefore, they entered into a new contract in December 2004 with Richard Wolcott, the executor of the estate of the original contract seller, Lester Wolcott. The effect of this amended contract was to extend the balloon date to December 15, 2007.

After receiving partial relief from the automatic stay, the Bank initiated an action in Iowa District Court in Johnson Count to foreclose on Debtors' homestead real estate. This Court partially lifted the stay to allow the filing in order that the Bank could avoid a potential statute of limitations problem. The foreclosure is otherwise stayed pending the results of this adversary proceeding. In its brief, the Bank states that the amount the Bank is entitled to collect is a question for the Court, and it will defer to either this Court or the Iowa District Court regarding which debt and how much debt is secured by the Mortgage and Assignment.

Debtors argue that the Bank cannot bring a second suit on the notes which were the subject of the Oxford Heights foreclosure. They assert the Bank cannot reach Debtors' homestead property before all non-homestead property is sold. Debtors further assert the Assignment of Contract is no longer valid in light of the new contract they entered into in 2004. They also raise equitable defenses of waiver and estoppel.

3

The Bank argues the amended Real Estate Contract does not invalidate its Assignment of Contract and the Mortgage and the Assignment survived Debtors' bankruptcy discharge. The Bank seeks to satisfy from Debtors' homestead the lesser of the amount owing on the two Notes signed November 22, 20002, i.e. $98,716.31 including interest, or the amount of the deficiency after the Oxford Heights foreclosure, i.e. $187,191.99 including interest.

## CONCLUSIONS OF LAW

This Court must determine the effect of Debtors' bankruptcy case and subsequent activities on the Bank's lien interest in Debtors' homestead real estate. Questions to be answered include 1) the validity of the Assignment of Contract in light of the amended Real Estate Contract, 2) the effect of the bankruptcy filing on the Bank's lien on Debtors' homestead real estate, and 3) the effect of the Oxford Heights foreclosure on the Bank's rights against Debtors' homestead.

## VALIDITY OF ASSIGNMENT OF CONTRACT

Debtors argue that the amended real estate contract extinguishes the contractual obligations of the earlier contract, including the Bank's rights under the Assignment. The Bank argues that the amendment has no effect on the previous Assignment.

The Iowa Supreme Court stated in Steele v. Mills, 27 N.W. 294 (Iowa 1886), that a new contract, entered into with knowledge of the rights of but without the assent of assignees, was not binding on the assignees. The new contract was a nullity as to the assignees, and their rights remained the same as if it had never been made. Id. at 296. Likewise, in In re Nichols, 1988 WL 53381, at *3 (Bankr. N.D. Iowa Feb. 29, 1988) (Edmonds, J.), this Court held that a new security agreement did not novate the earlier contract and the security interest initially created and assigned to a third party remains.

The Court concludes that the amended real estate contract between Debtors and the Estate of Lester Wolcott did not affect the Bank's rights under the Assignment of Contract dated November 22, 2002.

## EFFECT OF THE BANKRUPTCY ON THE BANK'S LIEN

Where a lien exceeds the value of collateral, the creditor has a secured claim to the extent of the value of the collateral, and an unsecured claim for the balance of the claim. United

4

States v. Ron Pair Enters., Inc., 489 U.S. 235, 238 (1989).  The date of the bankruptcy filing is the appropriate time for determining the value of property against which a secured claim is asserted when the purpose of the valuation is to determine the survival of the lien against the discharge.  In re Richardson, 82 B.R. 872, 873 n.1 (Bankr. S.D. Ohio 1987).  The rationale for a determination of value at the time of the filing of the petition is to permit post-petition appreciations in the value of property to inure to the benefit of a debtor under the fresh start principle.  In re Boch, 154 B.R. 647, 655 (Bankr. M.D. Pa. 1993); In re Frengel, 115 B.R. 569, 572 (Bankr. N.D. Ohio 1989).

> The assets of the debtor are determined at the time of filing.  Apart from allowable exemptions, the remainder of the debtor's assets are distributed to his creditors.  The debtor receives a discharge and a new beginning.  Property acquired afterward is not subject to claims of pre-petition creditors.  Appreciation of property or an increase of equity ownership by the reduction of an outstanding mortgage are examples of after-acquired property which are attributable to debtor's post-bankruptcy efforts.  If a real property mortgage is not avoidable to the extent it is undersecured, a pre-petition creditor will impair the debtor's fresh start by partaking in his post-petition property acquisitions.

In re Zlogar, 126 B.R. 53, 57 (Bankr. N.D. Ill. 1991).

The U.S. Supreme Court has held that "the value of the property (and thus the amount of the secured claim under § 506(a)) is the price a willing buyer in the debtor's trade, business or situation would pay to obtain like property from a willing seller." Associates Commercial Corp. v. Rash, 520 U.S. 953, 960 (1997) (determining value in the context of a Chapter 13 "cram down").  This is known as the replacement-value standard, similar to that applied in In re Trimble, 50 F.3d 530, 531-32 (8th Cir. 1995).  The Court in Rash rejected the foreclosure value standard which deducts the costs of sale in determining value under § 506(a).  Id. at 1885.  The first step in determining a secured claim is to determine the value of the collateral.  In re Calender, 262 B.R. 777, 780 (B.A.P. 8th Cir. 2001).  The next step in determining a creditor's secured claim is to subtract prior encumbrances from the value of the collateral.  Id.

The general rule in bankruptcy is that interest stops accruing against a debtor upon the date of filing of a petition.

5

In re Brooks, 323 F.3d 675, 678 (8th Cir. 2003).  Interest under the terms of a promissory note ceases upon the filing of the bankruptcy petition.  In re Consumers Realty & Devel. Co., 238 B.R. 418, 425 (B.A.P. 8th Cir. 1999).  The Bankruptcy Code makes an exception to this rule for oversecured creditors.  United Savs. Ass'n v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 372 (1988).  However, "the undersecured creditor, who has no [security] cushion, falls within the general rule disallowing postpetition interest."  Id. at 372-73.

For this analysis, the Court will use the values and amounts of claims reflected in Debtors' bankruptcy Schedules.  These appear to conform to the assumptions made by the Bank on November 22, 2002.  As Mr. Berner testified, he thought the Debtors' equity in the homestead was approximately $50,000 at that time, considering the recent appraised value of the property, reduced by 15% and reduced by the real estate contract balance.

Debtors' Schedules A, C and D indicate that the value of their homestead real estate on the petition date was $265,000 and the balance on the Wolcott real estate contract was $200,000.  Deducting the prior encumbrance, the Bank's lien on Debtors' homestead is limited to Debtors' equity in the property, or $65,000.  Under Rash, the costs of a hypothetical sale are not deducted to determine the value of the Bank's lien on the homestead.

Interest on the promissory notes ceased on the date Debtors filed their Chapter 7 petition.  The Bank is obviously not oversecured, in light of the substantial deficiency remaining after the Oxford Heights foreclosure, and is therefore not entitled to postpetition interest.  All other liability to the Bank is unsecured and included in Debtors' discharge.  Any postpetition increase in equity in Debtors' homestead real estate inures to the benefit of Debtors and is not subject to the Bank's lien.

**EFFECT OF THE OXFORD HEIGHTS FORECLOSURE ACTION**

Debtors raise several issues arising from the Oxford Heights foreclosure action.  They argue that the Bank, by including Notes 343 and 344 in the subdivision foreclosure, forfeited its right to later seek satisfaction on those notes from Debtors' homestead real estate.  Debtors also argue that the Bank's failure to include all of the subdivision property under the amended plat precludes it from now reaching the homestead real estate.

**EXHAUSTION OF NONHOMESTEAD PROPERTY**

6

Under Iowa Code sec. 561.21(2), a homestead may be sold to satisfy debts "created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt." A homestead may be sold only for a deficiency remaining after exhausting all other property pledged for the payment of the debt. Weir & Russell Lumber Co. v. Kempf, 12 N.W.2d 857, 859 (Iowa 1944). The homestead should be preserved if its value is not needed to satisfy a judgment. First Nat'l Bank v. Diers, 430 N.W.2d 412, 415 (Iowa 1988). A mortgagor is required to satisfy mortgage debt from nonhomestead real estate before resorting to the homestead. Gaumer v. Hartford-Carlisle Savs. Bank, 451 N.W.2d 497, 501 (Iowa 1990).

The Bank had a mortgage on and foreclosed on the Oxford Heights property as defined by the original plat. Debtors amended the plat after giving the Bank the mortgage. Thus, portions of the subdivision remain titled in Debtors free of the Bank's lien. There is no other property for the Bank to exhaust before pursuing the homestead property under sec. 561.21(2).

## SERIAL FORECLOSURES

Debtors argue that the Bank forfeited its right to foreclose on the homestead when it first foreclosed on the Oxford Heights property. The Bank asserts it never intended to waive its rights under the homestead mortgage by first foreclosing on the Oxford heights property.

Debtors cite Farm Credit Bank v. Faught, 492 N.W.2d 422, 423 (Iowa 1992) (Faught II), and Federal Land Bank v. Faught Bros., Inc., 468 N.W.2d 793, 795 (Iowa 1991) (Faught I), for the proposition that once the bank "proceeded in rem against the real estate for the full amount of the indebtedness, the legal effect was to 'resolve the dispute then existing between the parties.'" Faught II, 492 N.W.2d at 423 (quoting Faught I). The court in Faught II held that the bank could not seek foreclosure of a mortgage in one action and in a later one ask for personal judgment against the mortgagee. Id. at 424.

The Bank cites Brenton State Bank v. Tiffany, 440 N.W.2d 583, 587 (Iowa 1989), which held that a real estate foreclosure judgment did not merge with a bank's replevin remedy and prevent the bank from later collecting the collateral under a security agreement. It is notable, however, that in Tiffany, the court distinguished the bank's U.C.C. security interest from a real estate mortgage. The court stated "Iowa Code section 654.4

7

requires an election between a separate suit on a note and a real estate foreclosure." Id.  That section states: "If separate actions are brought in the same county on the bond or note, and on the mortgage given to secure it, the plaintiff must elect which to prosecute.  The other will be discontinued at the plaintiff's cost."  Iowa Code § 654.4.

Unlike the bank in Faught II, the Bank herein is not attempting to seek a personal judgment and general execution on a note already included in a foreclosure action.  Rather, it is attempting to foreclose on a separate real estate mortgage.  Unlike the bank in Tiffany, the Bank is not seeking to execute on personal property collateral.  It is seeking to foreclose a mortgage on real estate.

In Faught II, the court stated that a mortgagor is not necessarily prevented from maintaining a personal judgment against a debtor on a note and, following judgment, foreclosing a mortgage.  492 N.W.2d at 424, citing Schnuettgen v. Mathewson, 222 N.W. 893, 896 (Iowa 1929).  "This is because the mortgage remains a lien, subject to foreclosure, until the debt is paid." Faught II, 492 N.W.2d at 424; see also In re Worley, No. 96-10450, slip op. at 3 (Bankr. N.D. Iowa Dec. 10, 1996).

As to the apparent bar in Iowa Code sec. 654.4 to separate actions on a note and mortgage in the same county, the court in Hamilton v. Henderson, 230 N.W. 347, 348 (Iowa 1930), noted that the statute relates to the prosecution of separate actions at the same time in the same county.

> It has never, however, been construed so as to prevent the holder of a mortgage from suing at law upon notes held by him and secured by such mortgage and subsequently prosecuting an action in the same county in equity for the purpose of enforcing the lien of the mortgage.

Id.  The court held that as the mortgagors did not prosecute the two actions in the same county at the same time, they were not put to an election.  Id.  It allowed the mortgagors to successively prosecute an action on the notes and another to foreclose the mortgage.  Id.

Based on the foregoing, the Court concludes that the Bank is not barred by the Oxford Heights foreclosure from pursuing its rights under the homestead mortgage.  The Oxford Heights action resulted in both a judgment on the notes and foreclosure on the subdivision real estate.  Debt, for which Debtors' homestead is

8

security, remains unpaid.  The homestead mortgage remains a lien on the homestead, subject to foreclosure, until the debt is paid.  The Bank is not seeking another judgment on the notes.  It is, instead, seeking to foreclose on additional security given by Debtors for notes which have already been brought to judgment.

## SUMMARY

The Court has considered all the arguments presented by the parties in light of the entire record in this case.  The issues addressed above are determinative of this matter.  Other arguments and issues raised are unavailing.

In summary, the Court finds the Assignment of Contract executed by Debtors on November 22, 2002 remains valid, regardless of the subsequent amended contract.  From the Mortgage and the Assignment of Contract Debtors executed, the Bank has a lien on Debtors' homestead.  The Bank's lien is limited in amount to the value of Debtors' equity in their homestead on the date they filed their bankruptcy petition.  Also, the Bank is not entitled to interest subsequent to that date.

Although the Mortgage is limited to $50,000, the Assignment of Contract is unlimited.  At the time Debtors signed the Assignment of Contract, they were liable for previous notes to the Bank either individually or as guarantors.  Thus, the Court finds the Bank's secured claim on Debtors' homestead is not limited to the amount due on Notes 343 and 344, which is at this point not accurately computed.  Regardless, however, the amount is limited to the extent of the equity Debtors' had in their homestead on the date they filed their bankruptcy petition.

The Bank is entitled to foreclose on Debtors' homestead.  The Oxford Heights foreclosure does not constitute an election on the part of the Bank to forego enforcing its lien on the homestead.

**WHEREFORE**, the parties agree Count I of Debtors' Complaint is no longer in issue.

**FURTHER**, Count II of Debtors' Complaint, asking that the Mortgage and Assignment be avoided is DENIED.

**FURTHER**, Defendant Solon State Bank retains a lien on Debtors' homestead to the extent described above.

**FURTHER**, the automatic stay is completely lifted for the parties to proceed with the foreclosure action in the Iowa

District Court, in accordance with the dictates of this ruling. This Court releases any jurisdiction over Debtor's real estate.

DATED AND ENTERED: November 13, 2006

*[signature: Paul J. Kilburg]*

PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE